Robert J. Bach, Esq.
RB - 2751
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

PATRICIA DUFFY

        PLAINTIFF

    against

CIGNA LIFE INSURANCE CO. OF NEW YORK, and
GOLDMAN SACHS LONG TERM DISABILITY PLAN
        DEFENDANTS

-----------------------------------------------------------X

INDEX NO.

2005 CV 1456(HB) (FM)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW

### INTRODUCTION

This is a suit under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") by a participant of an employee benefit welfare plan sponsored by the Goldman Sachs & Co. ("Goldman Sachs"), to obtain a long term disability benefit from the Goldman Sachs Long Term Disability Plan ("Plan"), which provided the benefits through a contract with CIGNA Life Insurance Company of New York ("CIGNA"). The Plaintiff, Patricia Duffy, was unable to do the material duties of her regular occupation as a Telephone Operator and left work on or about July 21, 2002[1].

---

1. Mrs. Duffy passed away on October 26, 2005.

Her claim for long term disability benefits and her subsequent appeals were denied by CIGNA, the insurer and contract administrator.

Plaintiff requests that the Court find that CIGNA improperly denied her long term disability benefit and award her the disability benefit and interest, attorney's fees, and such other remedy that the court deem appropriate.

## SUMMARY OF FACTS

Mrs. Duffy was employed since 1985 by Goldman Sachs, and worked for Goldman Sachs until she became disabled in July, 2002.

Her job required her to answer about 40 phone lines for 20 trader/brokers. The messages were often urgent or required immediate attention, and if the broker/traders were not at their desks, Mrs. Duffy would have to run around the trading floor to track them down, or go to other floors to find them. She was continuously moving around the floor to deliver the messages. She estimated that she received 500 calls a day.

In 1994 Mrs. Duffy was diagnosed with emphysema when she was hospitalized because of pneumonia. Although under doctor's care, her illness became progressively worse and in July, 2002 she was told by her doctor to stop working. She reported this to the Human Resources Department at Goldman Sachs, and was told that because her doctor ordered her to stop, she would have to stop working as soon as possible. She left at the end of that week.

She applied for a long term disability benefit in November, 2002 (See, Proposed Joint Pre-Trial Order, Exhibit C, Bates page number 0257: Hereinafter, "PTO, Ex.___, B.___".)

By letter dated February 5, 2003, her claim was denied. (PTO, Ex. Y, B. 200-202.)

She filed an appeal (PTO, Ex. FF, B. 185-186), and by letter dated May 5, 2003, her appeal was denied (PTO, Ex. NN, B. 166-167).

She retained counsel and by letter dated October 29, 2004, a request for reconsideration was filed. The request included a statement by Mrs. Duffy describing the details of her job. (PTO, Ex.A3, B. 076-081). Under separate cover, Philip Darivoff, Managing Director of Goldman Sachs & Co. also submitted a detailed description of the essential functions of her job. (PTO, Ex. ZZ, B. 082 -083). By letter dated January 10, 2005, her appeal was denied. (PTO, Ex H3, B. 060-061). This suit was then filed.

1. **THE COURT IS TO REVIEW THIS CLAIM *DE NOVO*.**

Under *Firestone v. Bruch, 489 US 101, 109 S. Ct. 948 (1989)*, a court has the authority to review the challenge of a claim denial *de novo* if the plan does not give the administrator the exclusive authority to determine eligibility. The Parties have stipulated in the Pre Trial Order, paragraph v, that the claim is to be reviewed by the Court, *de novo*.

2. **CIGNA BREACHED ITS FIDUCIARY DUTY TO PLAINTIFF BECAUSE IT BASED ITS DENIAL OF HER CLAIM ON A DEFINITION OF "REGULAR OCCUPATION" NOT FOUND IN THE PLAN. BASED ON THIS DETERMINATION CIGNA IMPROPERLY FOUND THAT HER JOB WAS SEDENTARY AND THEREFORE SHE WAS NOT DISABLED UNDER THE PLAN.**

**A. CIGNA improperly defined the term "regular occupation".**

According to the Plan:

> An Employee will be considered Disabled if, because of Injury or Sickness,

>   1.   he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Index Covered Earnings. (PTO, Ex. Y, B. 200). . . .

The Plan, however, does not define the term "regular occupation"[2], and instead of reviewing the specific material duties of Mrs. Duffy's job, CIGNA improperly used the Dictionary of Occupational Titles, to define Mrs. Duffy's job. *Kinstler v. First Reliance Standard Life*, 181 F.3d 293 (2nd Cir. 1999) (An insurer could not rely on the DOT definition of the claimant's job as it was different from her actual duties.)

Using the DOT definition, CIGNA improperly found that her occupation as a telephone operator was a "sedentary level occupation", and therefore "...needed to determine if [her] condition would prevent [her] from performing sedentary level work. (PTO, Ex. Y, B. 0201).

B.  **Based upon the incorrect characterization of Mrs. Duffy's job as sedentary, CIGNA improperly denied Mrs. Duffy's claim.**

In adjudicating Mrs. Duffy's claim, CIGNA acknowledged that she had a moderate [pulmonary] impairment.

In denying Mrs. Duffy's claim, CIGNA said:

>   A Nurse Case Manager and the Associate Medical Director of our office reviewed your medical records. Both of these medical consultants agreed that the medical documentation on file did not support a condition so severe that you would be incapable of **performing sedentary level work**. Therefore, we must regretfully advise you that we are unable to give

---

2.  In paragraph 29 of the Complaint Plaintiff alleged that the plan did not define the term "regular employment". The Defendant in its answer, paragraph admitted this allegation. (Answer, par. 17).

4

> favorable consideration to your claim.
>
> We are not disputing your diagnoses or that you may experience symptoms related to these diagnoses. However, the information we received does not document the severity of a condition or functional limitation that would render you disabled from **sedentary** level occupation. [Emphasis added]. (PTO, EX. Y, B.201)

3. **IF CIGNA HAD PROPERLY ADJUDICATED MRS. DUFFY'S JOB DUTIES, AND HAD APPLIED RELEVANT EVIDENCE, IT SHOULD HAVE FOUND MRS. DUFFY DISABLED UNDER THE TERMS OF THE PLAN.**

A. **Mrs. Duffy's job was not "sedentary" work; it was "light work".**

If CIGNA had reviewed Mrs. Duffy's job duties, it would have found that her job was not sedentary[3]. According to the DOT, "jobs are sedentary if walking and standing are required only occasionally and the other sedentary job criteria are met".

In her initial application for the Long Term Disability benefits, in the portion of the form filled out by Goldman Sachs, the following information was provided in response to the question about the details of Mrs. Duffy's job duties:

> 60% of her time was sitting
>
> 20% of her time was standing
>
> 20% of her time was walking.

(PTO, Ex. C, B. 258.)

This clearly exceeds the limitation for sedentary work - only occasional walking

---

3. "Sedentary" work is defined by the DOT as Lifting 10 lbs maximum and occasionally lifting and/or carrying such articles as dockets, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required **only occasionally** and the other sedentary criteria are met. [Emphasis added]

5

and standing. Additionally, in a subsequent disability Proof of Loss form dated December 26, 2002, she described her job as: "Phone work, paging, running to Conf. Rms [Conference Rooms]; talking all day". (PTO, Ex. I, B. 0238).

In her request for reconsideration, she described her job as follows:

> When I became disabled by my illness, I was not able to do the essential functions of my job. The job was very physical - it required continuous motion and activity and I was standing and walking much of the time. I was always yelling to get the messages to the banker/brokers. At a minimum I was always standing up looking for someone, or running around trying to find them. There were periods when I was able to sit, but it was infrequent. I estimate that I sat about 3 hours a day, the rest of time I was standing or walking. One day I counted the number of calls I had in a day; it totaled 500. This was hardly a sedentary job.(PTO, Ex. A3, B. 078);

Also see the Letter of Philip Darivoff, PTO, Ex. ZZ, B. 082- 083).

CIGNA should have determined that because of the amount of walking and standing her job should have been classified as "light work".[4] This error is clearly CIGNA's fault. The forms do not request in any significant detail, a description of the claimant's job - to the detriment of the naive claimant.

**B. CIGNA ignored relevant medical information.**

Mrs. Duffy filed an appeal, and by letter dated February 10, 2003, her doctor submitted additional medical information, and indicated that she had a "severe obstruction to airflow with no response to bronchodilators." He also noted:

---

4. "Light Work" is defined by the DOT as:

> Lifting 20lbs maximum with frequent lifting and/or carrying of objects up to 10 lbs. Even though the weight lifted maybe only be a negligible amount, a job is in this category, when it involves sitting most of the time with a degree of pushing and pulling of arm and leg controls or **when it requires walking or standing to a significant degree**.[Emphasis added]

6

"Additionally, Mrs. Duffy has had persistent symptoms of being dyspneic with minimal exertion. Although the notes from the office reflect no distress and breathing okay, this only depicts her rest condition and when there is anything other than rest involved, her dyspnea becomes very severe with marked limitations of her activity. She is on home oxygen and is essentially crippled from a respiratory point of view." (PTO, Ex. BB, B. 193.)

On March 30, 2003, she was awarded a Social Security Disability Benefit, with an on-set date of July 22, 2002, the day after she stopped working. PTO, Ex. TT, B. 091. This information was provided to CIGNA by Advantage 2000 Consultants, Inc[5] on April, 4, 2003 and noted the following:

Diagnosis Code: 4960 - Chronic Pulmonary Insufficiency (COPD).

(PTO, Ex. UU, B. 088).

Notwithstanding this information, by letter dated May 5, 2003, CIGNA denied Mrs. Duffy's claim, stating:

> Your Benefit Waiting Period began July 21, 2002 and ended on January 21, 2003. You have not submitted any medical information regarding your condition during this timeframe. Since we have not received any additional information sufficient to change our previous determination regarding your eligibility for Long Term Disability benefits, your claim is being denied for reasons detailed in our previous letter. (PTO, Ex. NN, B. 0166)

In the denial of her appeal and request for reconsideration, CIGNA ignored subsequent findings by New York State Disability and Social Security that Mrs. Duffy was disabled, and although not binding on the Plan, they do deserve consideration.

---

5.  Advantage 2000 Consultants, Inc. is the company that CIGNA referred to assist in the application for Social Security Benefits. PTO, Exs. O and P, B. 222-224.)

## CONCLUSION

Even assuming that Mrs. Duffy could do sedentary work, the material duties of her regular occupation exceeded the level of a sedentary occupation. CIGNA should have evaluated her ability to perform the regular duties of her job on that basis.

Further, CIGNA selectively considered evidence in its favor, but ignored evidence in the claimant's favor and ignored the opinions of her doctor and Social Security in determining her eligibility.

Accordingly, CIGNA's denial should be over-ruled and she should be awarded her disability benefit.

Robert J. Bach (RB 2751)
60 East 42nd Street
40th Floor
New York, NY 10165
212 - 867 - 4455
Attorney for Plaintiff

November 7, 2005
New York, NY